IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA MOJICA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 06-2900 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                           December 18, 2007

      Currently before the Court are the parties' Cross-Motions for Summary Judgment, as well as the Report and Recommendation of United States Magistrate Carol Sandra Moore Wells and the Defendant's Objections to that Report and Recommendation. For the reasons set forth below, Defendants's Objections are sustained, the Magistrate Judge's Report and Recommendation is approved in part and disapproved in part and Judgment is entered in favor of Defendant.

**I.   PROCEDURAL HISTORY**

      Plaintiff, Maria Mojica, has appealed from the final decision of the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq*. Plaintiff originally applied for SSI on January 14, 2004, alleging disability since December 30, 1994, based on depression, anxiety, mixed personality disorder, degenerative joint disease of the lumbosacral spine and arthritis. ®. 89-91, 98, 119.) The state agency denied benefits on May 7, 2004. ®. 55-

61.)  Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"), at which time she amended her disability onset date to January 14, 2004.  ®. 33, 62.)  Following the hearing, on July 6, 2005, ALJ Javier Arrastia issued a decision, dated January 5, 2006, deeming Plaintiff not disabled.  ®. 16-27, 29-54.)  The Appeals Council denied Plaintiff's request for review on May 26, 2006.  ®. 7-9.)  Subsequently, Plaintiff initiated a civil action in this Court challenging the final decision of the Commissioner.  The undersigned referred this case to Magistrate Judge Carol Sandra Moore Wells for a Report and Recommendation (REPORT AND RECOMMENDATION).

On June 26, 2007, the Magistrate Judge issued an REPORT AND RECOMMENDATION recommending remand of the matter on five grounds, as follows:  (1) the ALJ erred in not recontacting consultative examiner Dr. Laviolette under 20 C.F.R. § 416.912(e); (2) the ALJ failed to accord proper weight to the opinions of therapist Francisco Liriano and psychiatrist Christos Ballas, M.D. regarding plaintiff's limitations; (3) the ALJ's credibility determination is flawed; (4) the ALJ's residual functional capacity assessment is not supported; and (5) the hypothetical question posed to the vocational expert was inaccurate as it failed to reflect plaintiff's complete inability to communicate in English.  The Magistrate Judge rejected Plaintiff's remaining arguments.  Defendant has now objected to the five bases for remand enumerated by the REPORT AND RECOMMENDATION.  Having engaged in a thorough review of the record, the REPORT AND RECOMMENDATION and the Objections, the Court will adopt and approve those portions of the REPORT AND RECOMMENDATION to which no objection was raised, but will disapprove the Magistrate Judge's recommendation to the extent that it urges remand.

## II. STANDARD OF REVIEW OF A REPORT AND RECOMMENDATION[1]

When a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in *de novo* review of the issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  In so doing, the Court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report.  28 U.S.C. § 636(b)(1).  The Court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations.  See United States v. Raddatz, 447 U.S. 667, 676, 100 S. Ct. 2406 (1980).

## III. DISCUSSION

### A. Whether the ALJ Erred in Not Recontacting Dr. Laviolette

In his first objection, Defendant challenges the Magistrate Judge's finding that the ALJ improperly failed to recontact state consultative psychological examiner Loren Laviolette, Ed.D. for clarification of his medical opinion.  Specifically, Dr. Laviolette examined Plaintiff on April 23, 2004 in connection with her application for SSI.  (R. 152-57.)  In the narrative report of his findings, the doctor observed that Plaintiff was neatly dressed, fully oriented and had adequate concentration, but suffered alleged problems with depression, anger and anxiety.  (R. 152-53.)  Additionally, the doctor indicated that Plaintiff attained a deficient score on a mental status examination.  (R. 153.)  He believed, however, that she was not really motivated to do anything and engaged in some "passive withholding."  (R. 153-55.)  Ultimately, he diagnosed her

---

1. The facts, ALJ's findings, legal framework for assessing a disability claim and standard for review of an administrative decision were properly summarized by the Magistrate Judge.  Accordingly, the Court incorporates them by reference into this opinion.

3

with depression and gave her a Global Assessment of Functioning score of 55.[2] ®. 154.) In his concurrently prepared, checklist Medical-Source Statement of Plaintiff's ability to perform work-related activities, Dr. Laviolette then opined that Plaintiff could understand and remember short and simple instructions, but was moderately to extremely impaired in understanding, remembering and carrying out detailed instructions and markedly impaired in making judgments on simple work-related decisions. Further, he deemed Plaintiff markedly impaired in interacting appropriately with the public, supervisors and co-workers, responding appropriately to work pressures in a usual work setting and responding appropriately to changes in a routine work setting. ®. 156.)

When reviewing the evidence of record, the ALJ considered Dr. Laviolette's assessments and thoroughly discussed the various findings in the narrative report. ®. 22.) With regard to the checklist Medical Source Statement, however, he concluded that, "[a]lthough it was not entirely clear on what basis the doctor reached her [sic] opinions, I have taken the marked and moderate limitations into account when assessing the residual functional capacity above." ®. 24.) Focusing upon the ALJ's statement that Dr. Laviolette's opinion was "not entirely clear," the Magistrate Judge determined that the ALJ had effectively acknowledged that the evidence was inadequate to allow him to determine whether Plaintiff was disabled. (REPORT AND RECOMMENDATION 17.) The Magistrate Judge then cited 20 C.F.R. § 416.912(e), which provides, in pertinent part:

---

2. A Global Assessment of Functioning ("GAF") score of 51-60 indicates "[moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school function (e.g. few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. 2000) [hereinafter "DSM-IV"].

4

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 416.912(e). Relying on this provision, the Magistrate Judge determined that the ALJ was required to recontact Dr. Laviolette to obtain clarification of the basis for his opinion. (REPORT AND RECOMMENDATION 17-18.)

The Court disagrees with this conclusion on several grounds. First, "[t]he regulation applies only to a 'treating' source, whether that is a physician, psychologist or other medical source." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); see also Washington v. Barnhart, Civ. A. No. 04-1137, 2005 WL 70802, at *7 (E.D. Pa. Mar. 25, 2005) (implying that the recontact provision of the regulations applies only to treating medical sources); Rodriguez v. Barnhart, Civ. A. No. 04-5375, 2005 WL 2250797, at *8 (E.D. Pa. Sept. 15, 2005) (same). As Dr. Laviolette was a consultative examiner employed by the Social Security Administration, section 416.912(e) is inapplicable.

Second, even if Dr. Laviolette were a treating source, the Magistrate Judge misapplied the recontact provision. It is well established that, under 20 C.F.R. § 416.912 (e), the ALJ is only required to seek additional or clarifying information if the information already in its

5

possession, whether or not contradictory, is "inadequate for [the ALJ] to determine whether [the applicant] is disabled or not." Id.; see also Becker v. Barnhart, Civ. A. No. 03-6374, 2005 WL 747047, at *5 (E.D. Pa. Apr. 1, 2005); Truett v. Barnhart, Civ. A. No. 04-5376, 2005 WL 3216741, at *4 (E.D. Pa. Nov. 23, 2005); Washington, 2005 WL 701802, at *7. Thus, notwithstanding the presence of an inconsistent treating doctor's report, if the ALJ can make a decision based on the existing evidence of record, he has the discretion to do so. Although the Third Circuit has yet to explicitly address the standard of when the ALJ is obligated to recontact a treating physician, most cases in this Circuit have determined that "notwithstanding the deficiencies of a treating physician's opinion, the evidence on the record remained 'adequate' to reach a disability determination." Rodriguez, 2005 WL 2250797, at *8 (citing cases); see also Thurman v. Barnhart, Civ. A. No. 05-5447, 2007 WL 2728656, at *7 (E.D. Pa. Sept. 18, 2007) (citing Rodriguez).

In the case at bar, the ALJ had sufficient evidence on which to make a decision, including more than two years of psychiatric treatment notes, a state reviewing physician opinion and the extensive written report of Dr. Laviolette. The ALJ's comment that the basis for Dr. Laviolette's checklist opinion was "not entirely clear" stemmed from the fact that the limitations he imposed were inconsistent with many of his findings as detailed in his full written report, including the GAF score of 55, the determination that Plaintiff had adequate concentration and the suggestion that Plaintiff showed lack of motivation and passive withholding. (R. 152-54.) Under the clear mandate of section 416.912(e), the mere fact that the checklist assessment was contradicted by parts of the written report and other evidence of record did not trigger the ALJ's

6

duty to recontact Dr. Laviolette.[3]  In turn, the ALJ's failure to recontact Dr. Laviolette does not provide a basis for remanding this case.

Finally, notwithstanding the ALJ's uncertainty of the basis for Dr. Laviolette's checklist restrictions, he explicitly considered those restrictions when formulating the residual functional capacity assessment.  Indeed, the ALJ limited Plaintiff to simple, routine tasks, in express recognition of Dr. Laviolette's notation that Plaintiff was unimpaired in that area, and found that Plaintiff could not be involved in interaction with the public, in acknowledgment of Dr. Laviolette's marked impairments in that area.  To the extent that the ALJ did not include some of the doctor's limitations, his decision was explained and supported by substantial evidence.

In sum, the Court concludes that the ALJ did not err in failing to recontact Dr. Laviolette, as nothing in the regulations required him to do so.  Accordingly, the Court declines to adopt the recommendation to remand the case on this ground.

> **B.    Whether the ALJ Failed to Accord Proper Weight to the Opinions of Therapist Francisco Liriano and Psychiatrist Christos Ballas Regarding Plaintiff's Limitations**

Defendant's second Objection focuses on the Magistrate Judge's recommended remand based on the ALJ's alleged "terse explanation" for rejecting the opinions of Mr. Liriano and Dr. Ballas.  By way of background, Mr. Liriano and Dr. Ballas treated Plaintiff for her depression and anxiety disorders from February 2003 to December 2004.  On November 5, 2004, Dr. Ballas completed a Psychiatric Review Technique form imposing on Plaintiff a moderate

---

3.  Notably, the Third Circuit has held that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993).

restriction in both activities of daily living and maintaining social functioning, a marked restriction in maintaining concentration, persistence or pace and three episodes of decompensation, each of extended duration. (R. 302-14.) Subsequently, on November 19, 2004, Mr. Liriano and Dr. Ballas jointly prepared a Medical Assessment of Ability to Do Work-Related Activities (Mental), finding that Plaintiff was seriously limited in all areas of making occupational adjustments, seriously limited in understanding, remembering and carrying out both complex and detailed job instructions and seriously limited in all areas of making personal-social adjustments, but for her ability to maintain her personal appearance. (R. 163-65.) The ALJ assigned "no particular weight" to these opinions in light of the other documented evidence of record. (R. 25.) The Magistrate Judge, in contrast, concluded that the treatment notes from these providers "amply support[ed] their opinions concerning Plaintiff's limitations" and that "[t]he ALJ's terse explanation for rejecting their conclusions, thus, based upon incorrect reasons, is not sustainable." (REPORT AND RECOMMENDATION 15.)

The Court respectfully disagrees with the Magistrate Judge's conclusion. Findings of fact made by the Commissioner of Social Security are conclusive if they are supported by substantial evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-565 108 S. Ct. 2541, 2550 (1988)). In making this

determination, a reviewing court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record.  Monsour, 806 F.2d at 1190.  In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence.  Id. at 1190-91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." (quoting Schwartz v. Halter, 134 F. Supp.2d 640, 647 (E.D. Pa. 2001))).

Applying this standard, the ALJ's analysis survives judicial review.  Social Security regulations mandate that a treating source's opinion on the issue of the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)).  If, however, the opinion of a treating physician is "conclusory and unsupported by the medical evidence," the ALJ may choose to disregard it.  Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).  When doing so, the ALJ must explain his reasoning on the record.  Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986).

The ALJ offered sufficient reasons for rejecting Mr. Liriano's and Dr. Ballas's form reports.  Primarily, he noted that the serious limitations imposed in the reports were not reflected anywhere in the progress notes from the Northeast Community Mental Health Center.  As the ALJ remarked, at the start of treatment, Plaintiff was given a GAF score of 55, which indicated only moderate symptoms.  One month into treatment, on March 20, 2003, plaintiff's

9

GAF score increased to 65, suggesting only mild symptoms.[4] By October of 2003, she maintained a GAF score of 65. ®. 185.) Nothing in subsequent treatment notes suggests that Plaintiff experienced any significant deterioration in her condition after that time. Indeed, the notes from 2004 reflect the identical complaints of anxiety, inability to sleep, poor control of her aggressiveness and a depressed mood. More importantly, as recognized by both the ALJ and the Magistrate Judge, the treatment notes towards the end of 2004 evidence improvement. For example, on October 12, 2004, she indicated that she was calmer over the previous week. ®. 214.) On November 10 and 17, 2004, she was social, felt better, was sleeping better and was more cooperative. ®. 212.) On December 2, 2004, she felt better with more energy. ®. 211.) Finally, contrary to Dr. Ballas's assessment, the treatment notes identified no episodes of decompensation. As the Social Security regulations direct an ALJ to consider whether a medical source has provided relevant evidence to support an opinion,[5] the ALJ was justified in relying on these inconsistencies.

Moreover, the ALJ properly considered the consistency of this medical opinion with the record as a whole. 20 C.F.R. § 416.927(d)(4). Specifically, the ALJ cited to the treatment records from psychiatrist Dr. L. Perez Rocha as contradictory medical evidence. In June 2005, Dr. Rocha expressly found that Plaintiff was doing "well" on medication. ®. 327.)

---

4. A GAF score of 61-70 suggests "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV, supra note 2, at 32.

5. "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 416.927(d)(3).

Such evidence undermines any finding that Plaintiff was as disabled as Dr. Ballas and Mr. Liriano suggested.

Finally, the ALJ relied on the opinions from two non-treating medical sources, Drs. Laviolette and Kowalski.  Prevailing case law dictates that, when faced with conflicting reports between a treating and a consulting physician, an ALJ should generally defer to the findings of the treating physician rather than to a physician who has examined the claimant as a consultant or not at all.  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993); see also 20 C.F.R. § 416.927(d)(2).  Nonetheless, "[t]he opinions of non-examining treating physicians may override a treating source's opinions provided that the former are supported by evidence in the record."  Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995) (citing Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993)), aff'd, 85 F.3d 611 (3d Cir. 1996).  In this case, Dr. Laviolette, upon full examination, noted that Plaintiff had a fair amount of eye contact, looked like a reasonably healthy person and moved reasonably well in the room.  ®. 153.)  Although she scored mentally deficient on a mental status examination, Dr. Laviolette opined that she was not motivated, engaged in passive withholding and did not always make the best effort.  ®. 153.)  Likewise, Dr. Kowalski concluded, based on a review of the medical records, that Plaintiff had only a mild limitation in activities of daily living, moderate limitations in social functioning and concentration, persistence and pace and no episodes of decompensation.  ®. 133-151.)  When considered in combination with the other evidence of record, these two assessments provided on appropriate basis on which the ALJ could discount the reports of Mr. Liriano and Dr. Ballas.

In sum, the ALJ cited to more than substantial evidence in support of his conclusion.[6] Whether this Court would have weighed the evidence differently is of no moment and falls outside of our province. Accordingly, we decline to remand this basis for a reconsideration of the weight assigned to these opinions.

### C. Whether the ALJ's Credibility Determination and Residual Functional Capacity Assessment Are Flawed.

In his third and fourth objections, Defendant contends that the Magistrate Judge mistakenly recommended reconsideration of the ALJ's credibility determination and residual functional capacity assessment ("RFC"). The Court again sustains these objections.

With respect to the credibility analysis, the Magistrate Judge determined that "[t]he ALJ properly considered all of the available medical evidence before determining that Plaintiff's testimony was not credible." (REPORT AND RECOMMENDATION 19.) Nonetheless, she found that because the "the ALJ erred in evaluating the treatment notes and opinions of Mr. Liriano and Dr. Ballas and in failing to recontact Dr. Laviolette to seek clarification of her opinions[,] [s]uch errors may have tainted the ALJ's assessment of Plaintiff's credibility." (REPORT AND RECOMMENDATION 19-20.) As discussed in detail above, however, the Court finds that no such errors occurred. Accordingly, the credibility analysis remains well-supported by substantial evidence.

The same holds true for the RFC. The Magistrate Judge simply recommended that, after the ALJ corrects any errors in his assessment of the medical evidence and Plaintiff's

---

6. In her Reply to Defendant's Objections, Plaintiff suggests that Defendant has attempted to engage in post-hoc rationalization, which is forbidden on appeal. Newton v. Apfel, 209 F.3d 448, 455 (3d Cir. 2000). To the contrary, however, Defendant has cited to evidence explicitly relied upon by the ALJ.

credibility, he reassess Plaintiff's residual functional capacity.  As the Court finds no basis for reassessment of the evidence, however, the RFC must likewise stand.

### D.      Whether the Hypothetical Question Posed to the VE Was Inaccurate

Defendant's final objection to the REPORT AND RECOMMENDATION challenges the Magistrate Judge's finding that the hypothetical question posed to the vocational expert ("VE") was inaccurate.  Specifically, at the administrative hearing, the ALJ asked the VE to consider a younger individual with a "limited ability to communicate in English and no past relevant work [who was] limited to light work as defined in the regulations and can perform simple, routine tasks not involving interaction with the public."  ®. 46.)  In response, the VE identified several jobs consistent with the limitations imposed in that hypothetical, including employment as a cleaner/housekeeper, food preparation worker or machine tender/operator, all of which existed in significant numbers in the regional and national economies.  ®. 46.)  Thereafter, in his written opinion, the ALJ included, among his Findings of Fact, the determination that "[t]he claimant is illiterate and not able to communicate in English (20 C.F.R. § 416.964)." ®. 26.)  In a *sua sponte* consideration of this portion of the record, the Magistrate Judge found a discrepancy between the hypothetical question and the Findings of Fact, as follows:

> The hypothetical question posed to the VE, mistakenly described Plaintiff as having "limited ability to communicate in English." ®. 46) "Limited" versus "no" ability could have significantly impacted the VE's finding that Plaintiff could adequately perform housekeeper, food preparation worker, and machine tender positions.  In any event, since the ALJ omitted one limitation he clearly found in the hypothetical question posed to the VE, there is no vocational evidence to support a non-disability determination.

> See Ramirez v. Barnhart, 372 F.3d at 550. Upon remand the ALJ
> shall submit an accurate question to the VE.

(REPORT AND RECOMMENDATION 20-21.)

In order for a VE's testimony to constitute substantial evidence, it must reflect all of the claimant's impairments that are supported by the record. Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005). As the Third Circuit emphasized:

> While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.

Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). The law does "not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant," but does require that the hypothetical "accurately convey to the vocational expert all of a claimant's *credibly established limitations*." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (internal quotation marks omitted).

Considering this jurisprudence, the Court must again sustain Defendant's objection to this determination on two grounds. First, the hypothetical, as posed by the ALJ, was well-supported by substantial evidence. Plaintiff testified that she went through the eighth grade in the Philadelphia school system, could read a "little bit" of English and could understand some parts of a newspaper story. ®. 36-37.) Based on these statements, the ALJ described her to the VE as having a "limited ability to communicate in English." ®. 46.) Plaintiff never challenged this characterization either in the administrative hearing, at the Appeals Council level or in any briefs to this Court. As such, no factual basis exists for finding the language limitation, as described by the ALJ, improper. Although the ALJ, in his subsequent written opinion, used the

14

term of art "not able to communicate in English," it is obvious that he did so in order to comport with the regulation, 20 C.F.R. § 416.964(b)(5), which describes an "inability to communicate in English" as a vocational factor to be considered in making a disability determination. This finding did not negate the accuracy of the earlier hypothetical.

Moreover, even assuming *arguendo* that Plaintiff had no ability to communicate in English, as opposed to a limited ability, the Magistrate Judge does not clearly identify what impact this error had on the outcome. As recognized by Social Security regulations:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. Similarly, the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs. This, in turn, represents substantial vocational scope for younger individuals (age 18-49) even if illiterate or unable to communicate in English.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(g). The VE, familiar with the Social Security regulations, identified jobs that did not require an ability to speak English. While the inclusion of "no ability" to speak English, as opposed to "limited ability" to speak English in the hypothetical may have speculatively reduced the available number of each of the identified jobs, this Court still could not find that the Commissioner failed to meet his burden under step five of the sequential analysis. Therefore, we decline to remand on this ground. See Rutherford, 399 F.3d at 553 (3d Cir. 2005) (holding that where error by ALJ is harmless and would not affect the outcome of the case, remand is not warranted); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir.

1989) (stating that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result" ).

## IV.  CONCLUSION

For all of the reasons set forth above, this Court cannot approve and adopt the Report and Recommendation issued by the Magistrate Judge suggesting that the case be remanded.  Accordingly, we affirm the decision of the Commissioner, grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA MOJICA, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 06-2900 |
| MICHAEL J. ASTRUE, COMMISSIONER | : | |
| OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**ORDER**

**AND NOW**, this *18th* day of *December*, 2007, upon consideration of Plaintiff's Motion for Summary Judgment (Docket No. 7), Defendant's Cross-Motion for Summary Judgment (Docket No. 8), Plaintiff's Reply Brief (Docket No. 9), the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells (Docket No. 11), Defendant's Objections thereto (Docket No. 14) and Plaintiff's Response to Defendant's Objections (Docket No. 13), and upon careful review of the entire record, it is hereby **ORDERED**, as follows:

1. The Report and Recommendation is **APPROVED in part** and **DISAPPROVED in part**;

2. Plaintiff's Motion for Summary Judgment is **DENIED**;

3. Defendant's Motion for Summary Judgment is **GRANTED**;

4. **JUDGMENT** is **ENTERED** on behalf of Defendant and against Plaintiff.

This case is now **CLOSED**.

BY THE COURT:

/s/ *Ronald L. Buckwalter, S. J.*
RONALD L. BUCKWALTER, S.J.